UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL TESLEY,

|  | Plaintiffs, | Case No. 17-cv-11249 |
|---|---|---|
| v. | | Honorable Denise Page Hood |
| | | Magistrate Judge David R. Grand |

D. MARTIN and COOK,

Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT [12]**

## I.     RECOMMENDATION

Before the Court for a report and recommendation is Defendants Dave Martin and A. Cook's (collectively, "Defendants") "Motion to Dismiss and/or for Summary Judgment Based on Failure to Exhaust Administrative Remedies."  (Doc. #12).  For the reasons set forth below, IT IS RECOMMENDED that Defendants' motion (Doc. #12) be GRANTED.

## II.     REPORT

### A.  Factual Background

#### 1. The Parties

Plaintiff Nathaniel Tesley ("Tesley") is currently incarcerated by the Michigan Department of Corrections ("MDOC").  Tesley is presently housed at the Jackson Correctional Facility in Jackson, Michigan, but the conduct that is the subject of his complaint took place at the Gus Harrison Correctional Facility ("ARF").  On April 19, 2017, Tesley commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. §1983, alleging violations of his rights under the First, Fifth, Eighth, and Fourteenth Amendments of the United States

Constitution.  The named Defendants, who have been identified as "Dave Martin" ("Martin") and "A. Cook" ("Cook") (Doc. #12 at 1), are both ARF employees.

### 2. Tesley's Complaint

On April 19, 2017, Tesley, acting *pro se*, filed his complaint against Defendants.  Tesley alleges that on August 30, 2016, Defendant Cook approached him, asking Tesley to report for second shift work duty in the event that Tesley's first shift duty released him at an earlier time. (Doc. #1 at 3).  Tesley told Cook that he was unable to comply with the request because, according to ARF rules, at the time when Tesley was usually released from his first shift job all prisoners were to be in their housing units.  Thus, Tesley would also be required to be in his housing unit rather than going to another work shift.  Tesley explained that should Cook require him to report for second shift duty, Cook could contact Tesley's unit officers and he would report for second shift duty when prisoner movement was allowed to resume.  (*Id.*).  Cook responded by telling Tesley to continue his first shift work but to remain available should he be required to report for second shift duty.  (*Id.*).

Tesley claims that on September 5, 2016, he reported for his usual shift at 1230 hours, but was told by his immediate supervisor, Officer Howard, that he was not needed.  (*Id*. at 4). Later, Cook issued Tesley a misconduct report, stating that Tesley was not at work between 1400 and 1530 hours, and did not have staff authorization to be absent.  (*Id*. at 3).  On September 6, 2016, Officer Howard allegedly informed Cook that Tesley had reported to his work at the appropriate time, but had been told to return to his housing unit because he was not needed.  (*Id.* at 4).  Tesley thus claims the report written by Cook is fraudulent.

Defendant Martin was to conduct a hearing regarding the misconduct report on September 17, 2016.  He then postponed the hearing to confer with Officer Howard.  On

September 21, 2016, Martin allegedly approached Tesley regarding the hearing and the unrelated grievances Tesley had filed.  Tesley alleges that Martin told him that if he would rescind his two unrelated grievances, Martin would ensure a favorable outcome at the hearing.  Tesley refused, and Martin subsequently found Tesley guilty at the hearing.  (*Id.*).  As a result, Tesley was terminated from his first shift job assignment, and also received four days of "toplock."[1]  (Doc. #1 at 4-5).

Additionally, Martin conducted a contraband removal hearing regarding a typewriter that was in Tesley's possession.  Tesley now alleges that Martin told him that the contraband removal hearing was in retaliation for Tesley's refusal to withdraw his grievances, saying, "[S]ince you like writing grievance [*sic*] you won't see this typewriter again."  (*Id.* at 5).  As a result of this hearing, Tesley's typewriter was confiscated.  (*Id.*).

In his initial complaint, Tesley alleged an Eighth Amendment claim against Cook as well as First, Fifth, Eighth, and Fourteenth Amendment claims against Martin.  (Doc. #1 at 5-6).  On July 5, 2017, Tesley filed an amended complaint, bringing Eighth and Fourteenth Amendment

---

[1] MICHIGAN DEPARTMENT OF CORRECTIONS, CORRECTIONAL FACILITIES ADMINISTRATION, *Family Information Packet* at 8, available at
http://www.michigan.gov/documents/corrections/Family_Information_Packet_3-2017_597501_7.pdf :

> A prisoner on toplock shall not leave his/her cell, room, or bunk area for any reason without specific authorization from the appropriate staff person.  The prisoner may be deprived of use of his/her television, radio, tape player, and portable media player while on toplock as provided in the facility operating procedure.  Prisoners shall be released from toplock for regular showers, visits, medical care (including individual and group therapy), school, and law library.  The Warden or designee may authorize prisoners on toplock to go to the dining room, work assignments, and/or other specified activities, including group religious services; prisoners not released from toplock for store and Securepak orders shall have store and Securepak orders delivered to them.  Prisoners on toplock shall have a minimum of one hour per day of out-of-cell activity, which may include all out-of-cell activities described above.

claims against Cook, and First, Fifth, and Fourteenth Amendment claims against Martin.[2]  (Doc. #9 at 2).

In his August 15, 2017 response to Defendants' motion, Tesley withdrew the claims he had asserted against Cook.  (Doc. #15 at 1-2).[3]  However, on that same day Tesley also filed a motion for leave to amend his complaint to assert a First Amendment claim against Cook.  (Doc. #16).  Tesley incorporated by reference the allegations from his prior complaints, and added only the following new allegations against Cook:

> 24.    Defendant Cook knew or should have known that issuing Plaintiff the fraudulent misconduct was harassment and retaliation.
>
> 25.    Accordingly Plaintiff hereby asserts a claim against Defendant A. Cook under the First Amendment to the U.S. Constitution[.]

(*Id.*).

---

[2] In Paragraphs 27 and 28 of his original complaint, Tesley states that "the First, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution prohibited" both "[Martin's] conduct of retaliation against Plaintiff for being ill-disposed to brokering a deal" and "the seizure and ultimate destruction of Plaintiff's legally-purchased typewriter."  (Doc. #1 at 6).  It is in Paragraph 29 where Tesley asserts an Eighth Amendment claim against Martin.  In his amended complaint, Tesley states only that he wishes to replace Paragraph 29 to remove reference to the Eighth amendment claim and instead allege First, Fifth, and Fourteenth Amendment claims, which still leaves intact the brief references to the Eighth Amendment in Paragraphs 27 and 28.  However, because of the changes Tesley made to Paragraph 29, it is clear that Tesley intended to withdraw his Eighth Amendment claim against Martin.  Regardless, if Tesley does still intend to bring an Eighth Amendment claim against Martin, the claim no longer meets the applicable pleading standards.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007).  Moreover, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading."  *Clark v. Nat'l Travelers Life Ins. Co.*, 418 F.2d 1167, 1169 (6th Cir. 1975).  After Tesley's Amended Complaint, all that is left of his Eighth Amendment claim is two brief statements that the Eighth Amendment, in addition to the First, Fifth, and Fourteenth Amendments, prohibited Martin's conduct.  To call such references "threadbare" would be generous.  Accordingly, as to any Eighth Amendment claim asserted by Tesley, the Court recommends granting Defendants' motion to dismiss.

[3] Accordingly, the Court recommends granting Defendants' instant motion as to those claims.

Tesley did not propose any changes to his First, Fifth, and Fourteenth Amendment claims against Martin.  Cook filed an opposition to Tesley's motion to amend on the ground that the proposed First Amendment retaliation claim is futile because Tesley failed to properly exhaust it. (Doc. #18).

### 3.  Defendants' Motion to Dismiss

In light of the procedural moves discussed above, the Court need only analyze Defendants' instant motion as it relates to Tesley's First, Fifth, and Fourteenth Amendment claims against Martin.  However, some of Defendants' arguments apply equally to Tesley's motion to amend his complaint by adding a First Amendment retaliation claim against Cook. Accordingly, for efficiency sake, the Court will also address Tesley's motion to amend.

In their motion to dismiss and opposition to Tesley's motion to amend, Defendants argue that none of Tesley's allegations are adequate to state a claim for relief.  They claim Tesley failed to exhaust his retaliation claims both as to the typewriter, (Doc. #12 at 14), as well as to Defendant Cook.  (Doc. #18 at 8).  Additionally, they argue that the First Amendment claims against Defendant Martin and prospectively against Defendant Cook fail because Tesley did not engage in protected conduct by being absent from work.  (Docs. #12 at 20, #18 at 6-8).  They further argue that the Fifth Amendment is not applicable in this case because it applies only against the federal government, not the state government.  (Doc. #12 at 16).  Finally, Martin argues that Tesley's Fourteenth Amendment claim against him fails because Tesley was not deprived of a recognized liberty interest, nor was he deprived of due process.  (*Id.* at 16-19).

### B.  Standard of Review

#### 1.  Motion to Dismiss[4]

---

[4] While Defendants caption their instant motion as one "to Dismiss and/or for Summary

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements.  *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009).  Furthermore, a court is not

---

Judgment Based on Failure to Exhaust Administrative Remedies," their arguments are properly analyzed pursuant to the Rule 12(b)(6) standards.  *See Twohig v. Riley*, No. 12-11832, 2013 WL 3773365, at *4 (E.D. Mich. July 17, 2013) (concluding that a motion to dismiss based on failure to exhaust should be considered an unenumerated Rule 12(b) motion).  *See also, e.g., Burley v. Abdellatif*, No. 16-CV-12256, 2017 WL 3528927, at *4-5 (E.D. Mich. July 18, 2017).

required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (internal quotations omitted). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When a court is presented with a Rule 12(b)(6) motion testing the sufficiency of a complaint, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and their "complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### C. Analysis

#### 1. *Failure to Exhaust*

Defendants first argue that Tesley's claims against Defendant Martin regarding Tesley's typewriter should be dismissed because he failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (Doc. #12 at 10). Defendants similarly argue that Tesley failed to exhaust his prospective First Amendment claim against Defendant Cook. (Doc. #18 at 8). The Court agrees with Defendants that neither of these claims has been properly exhausted.

### a.      *Prison Litigation Reform Act*

Defendants argue that dismissal is appropriate because Tesley failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Under the PLRA, a prisoner may not bring a civil action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  This "exhaustion" requirement serves two main purposes: (1) it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and (2) it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93.  Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90.  Failure to exhaust is an affirmative defense that must be raised by a defendant and on which the defendant bears the burden of proof.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### b.      *MDOC Grievance Policy*

In determining whether a prisoner has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200.  In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy").  Policy Directive 03.02.130, (effective July 9, 2007), *available at* http://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf (last visited July 25, 2017).  A state prisoner must first complete the process outlined in the Policy – including

pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct.  (*Id.* at ¶ B).  The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance.  (*Id.* at ¶¶ P, V).  Importantly to the parties' arguments in this case, the Policy provides that the grievance must include "the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)" as well as the "[d]ates, times, places, and names of all those involved in the issue being grieved."  (*Id.* at ¶ R) (emphasis in original).[5]

If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal. (*Id.* at ¶ BB).  To file a Step II grievance, the prisoner must request an appeal form from the Step I Grievance Coordinator, and then send the completed appeal form to the Step II Grievance Coordinator designated for the field or office being grieved either within ten business days after receipt of the Step I response or, if no timely response is received, within ten business days of the date the response was due.  (*Id.*).  If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III.  (*Id.* at ¶ FF). Again, an inmate may only pursue a claim in federal court if he has complied with his obligations.

### c.   *Tesley Failed to Exhaust His Claim Related to the Typewriter Against Defendant Martin*

Tesley failed to exhaust his retaliation claim against Defendant Martin relating to the typewriter because, even viewing the matter through a liberal "substance over form" lens, Tesley did not even hint at such a claim in the applicable grievance.  On December 2, 2016, Tesley submitted a grievance regarding Martin's confiscation of Tesley's typewriter (the "Typewriter

---

[5] As the Sixth Circuit has held, a prisoner's grievance must give "prison officials fair notice of the alleged misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."  *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir.2004).

Grievance").  (Doc. #12-3 at 8).  However, in this Typewriter Grievance, Tesley did not allege any sort of retaliation by Martin whatsoever.  Instead, Tesley explained that the dispute concerned his ownership of the typewriter.  Tesley wrote that "Martin took my typewriter in a Contraband Removal Hearing because, as he said, 'It's not yours.'"  (*Id.*).  Tesley further explained that he provided a receipt with a serial number on it, and that Martin had incorrectly determined that the receipt's serial number did not match the serial number on the machine.  (*Id.*).  Tesley's grievance was reviewed and the typewriter in question examined.  (*Id.* at 9).  It was determined that the machine's model number did not match the model number on the receipt provided by Tesley, and that the machine's serial number had been removed.  (*Id.*).  Thus his Typewriter Grievance was denied.

Tesley appealed the denial at Step II[6], and then again at Step III.  (*Id.* at 6).  In each instance, he challenged only (1) the grievance respondents' interpretation of the evidence concerning the typewriter in question (*e.g.*, the respondents' references to the machine's serial number, the "inspection tag," the "serial number," etc.); (2) whether the contraband removal hearing was conducted by the appropriate prison personnel; and (3) whether the hearing officer applied the correct Policy Directive.  (*Id.* at 6).  Tesley never alleged, or even hinted at a claim that Martin took the typewriter in retaliation for Tesley's refusal to withdraw prior grievances.[7]

---

[6] The Step II respondent explained that while Tesley provided "documentation showing a Smith Corona 250 [typewriter] was purchased in 2003," the typewriter in question "is not a Smith Corona 250 . . . [and] there is a manufacturer inspection tag within the typewriter that is date[d] 8/30/06."  (*Id.* at 7).

[7] Importantly, any argument that Tesley was not aware of Martin's alleged retaliatory motive would be unavailing.  In his complaint, Tesley alleged that Martin told him, "[S]ince you like writing grievance [*sic*] you won't see this typewriter again."  (Doc. #1 at 5).  Again, neither the Typewriter Grievance nor any of Tesley's appeals so much as hint at this alleged statement or at any retaliatory motive by Martin.

10

In Tesley's response to Defendants' motion to dismiss he argues that he "did properly grieve the particular episode of Defendant Martin's desire and threat to retaliate against him for writing grievances when he submitted the first grievance describing such conduct (Dkt #) [*sic*] and there was no need to grieve every incident of his conduct after that when he was the 'sole actor' in the conspiracy." (Doc # 15 at 8). This argument is unavailing. To properly exhaust a retaliation claim, a prisoner must file a grievance that at least puts the grieved party and grievance responder on notice that such retaliation is being alleged. *Garrison v. Walters*, 18 F. App'x 329, 331 (6th Cir. 2001), is directly on point. In that case, a prison guard confiscated and destroyed an inmate's photo album. The inmate filed a grievance regarding the confiscation and destruction of the photo album. However, he "did not state any facts that would have indicated that he was grieving [the guard's] alleged retaliatory conduct." *Id.* Accordingly, the Sixth Circuit upheld the district court's conclusion that the inmate had failed to exhaust a retaliation claim. *See also*, *Sanchez-Ramos v. Sniezek*, 370 F. Supp. 2d 652, 655 (N.D. Ohio 2005) ("The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in his complaint. In the absence of such particularized averments concerning exhaustion, the action must be dismissed") (internal citations omitted).

As discussed above, it is undisputed that Tesley made no mention of retaliation in the Typewriter Grievance. It is also undisputed that the other grievance on which Tesley relies made no mention of the typewriter. Thus, Tesley failed to properly exhaust a retaliation claim related to the confiscation of his typewriter. *Garrison*, 18 F. App'x at 331; *Sanchez-Ramos*, 370 F. Supp. 2d at 655.

11

Tesley's reliance on the "sole actor" exception gets him nowhere as it is not applicable in this case.  The "sole actor" exception is a principle of agency law applicable when the agent so controls the principal that they are said to be of one will, and are treated as one actor.

> Pursuant to the sole actor doctrine, if the agents responsible for the adverse conduct are the officers or directors of the principal and those officers or directors "so dominated and controlled the [principal] that the [principal] had no separate mind, will, or existence of its own," then the officers and directors are deemed the "alter egos" of the principal and "any malfeasance on their parts is directly attributable to the [principal]." *In Re Fair Finance Co.*, 834 F.3d 651, 677 (6th Cir. 2016) (quoting *In re Dublin Sec.*, 133 F.3d 377, 380 (6th Cir. 1997)).

In this case, Tesley did not allege that Defendant Martin so controlled his employer (the Michigan Department of Corrections) that they essentially shared one will.  Moreover, even if the sole actor exception were applicable, it is relevant only as to the liability of the principal, but it does not relieve a plaintiff of his responsibility to exhaust administrative remedies.

Tesley also argues that he exhausted his administrative remedies because he "made superiors above Martin aware of his threat to retaliate against him for not abandoning his Constitutional Rights in the Grievance Procedure and that awareness was enough to fulfill the expectations of *Woodford*."  (Doc #15 at 8).  But exhaustion "means using all steps that the agency holds out, and doing so *properly*."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)).  By only vaguely making "superiors above Martin aware of [Martin's] threat to retaliate against him," Tesley did not properly use all the steps of the MDOC's grievance Policy, and thus did not exhaust the administrative remedies available to him with respect to a claim of retaliation with respect to Martin's confiscation of his typewriter.

### 2. Tesley's First Amendment Retaliation Claim Against Martin Should Be Dismissed

Tesley's First Amendment claim against Defendant Martin should be dismissed because

it fails to allege that Tesley suffered a cognizable adverse action.  A *prima facie* case for First Amendment retaliation entails three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant took an adverse action against the plaintiff "likely to chill a person of ordinary firmness" from engaging in the protected conduct; and (3) there is a causal connection between elements one and two – that is, "that the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).  The analytical approach in these cases is "intensely context-driven," and while the elements remain constant between cases, "the underlying concepts that they signify will vary with the setting."  *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).  For this reason, whether a statement is "protected" or an official's responsive action is "adverse" frequently turns on the particular facts of a case.  *Id.*  (citing *Thaddeus-X*, 175 F.3d at 397).

### a.  Protected Conduct

Tesley sufficiently alleges that he engaged in protected conduct.  In order to state a cognizable retaliation claim, the plaintiff must have been retaliated against "in response to the exercise of a fundamental right."  *Boblett v. Angelone*, 942 F. Supp. 251, 254 (W.D. Va. 1996), aff'd, 121 F.3d 697 (4th Cir. 1997).  The right of a prisoner to access courts is such a fundamental right.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999).  A prisoner also has an "undisputed right to file grievances against prison officials on his own behalf; if the grievances are frivolous, however, this right is not protected."  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).  The right to file a grievance has been read more broadly to encompass activities such as threatening to file a grievance.  *Carter v. Dolce*, 647 F.Supp.2d 826, 834 (E.D. Mich. 2009) ("Once a prisoner makes

clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the prisoner by that employee implicates all the policies intended to protect the exercise of a constitutional right").

According to Tesley, Martin postponed his hearing regarding Cook's allegedly fraudulent misconduct report and approached Tesley at his housing unit to review Tesley's other two grievances.  Martin allegedly offered Tesley the opportunity to "make a deal," in which Tesley would withdraw his grievances and Martin would find him not guilty at the hearing.  (Doc. #1 at 4).  Tesley refused to withdraw his grievances.  Because "protected conduct" includes both threatening to file a grievance and filing of a grievance, *Carter v. Dolce*, 647 F. Supp. 2d at 834 ("The Court believes that when it comes to protecting First Amendment rights, including the right to petition the government for redress, there is little difference between retaliating against a person for filing a grievance, and retaliating for threatening to file one"), the Court sees no reason why a refusal to withdraw a grievances would also not be "protected conducted."

### b.  Adverse Action

While Tesley's claim satisfies the "protected conduct" prong, it fails because it does not sufficiently allege that he suffered an adverse action.  In the First Amendment context, an action is "adverse" if it would "chill or silence a person of ordinary firmness" from exercising the right at stake.  *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007) (citing *Thaddeus-X*, 175 F.3d at 397).  While the level of harassment needed to satisfy this standard is by no means stringent, *Holzemer*, 621 F.3d at 524, the plaintiff must prove more than a mere *de minimis* effect on protected activity to raise a cognizable constitutional claim. *Thaddeus-X*, 175 F.3d at 396.

A court can consider not just the individual action of a defendant, but the reasonably

foreseeable consequences of that action. *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005). While a plaintiff may fail to state one specific action that is severe enough to qualify as adverse under the test, a court may find that various negative consequences a plaintiff pleads amount to adverse action when considered in the aggregate. *Griffin v. Berghuis*, No. 11-14876, 2016 WL 1165826, at *6 (E.D. Mich. 2016) ("[T]he individual incidents suffered by plaintiff are sufficient to constitute adverse action when considered in the aggregate").

Yet, even when considered in the aggregate, certain minor penalties, such as increased security or transfer to an alleged disciplinary facility, do not constitute adverse action. *Jennings v. Bennett*, No. 1:17-cv-555, 2017 WL 3712176, at *11 (W.D. Mich. Aug. 29, 2017) ("The Sixth Circuit has held that 14 days' loss of privileges, a short period in toplock, and extra duty are *de minimis* sanctions that would not deter a person of ordinary firmness from pursuing a grievance or other First Amendment Protected Activity") (citing *Ingram v. Jewell*, 94 Fed.Appx. 271, 273 (6th Cir. 2004)); *Gordon v. Benson*, No. 1:12-CV-295, 2012 WL 2522290, at *13 (W.D. Mich. June 28, 2012) (stating that seven days loss of privileges is not adverse action); *But see Siggers El*, 412 F.3d at 701 (finding that when a prisoner alleged that he was transferred and, as the result of the transfer lost his high paying job and faced practical obstacles to seeing his attorney, a reasonable trier of fact could conclude that there was adverse action). Allegedly false misconduct tickets have been found to constitute adverse action only when there are several tickets in addition to other negative actions. *Griffin*, 2016 WL 1165836, at *7 (Finding that a false minor misconduct ticket, an allegedly false misconduct ticket, and threats by officers of physical harm and additional false misconduct tickets, when considered in the aggregate, created a genuine issue of material fact as to adverse action).

Because prisoners have no constitutional right to prison employment, loss of such

employment generally does not qualify as adverse action. *Jewell v Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001) ("A prisoner has no constitutional right to prison employment or a particular prison job") (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)); *Sutton v. Glennie*, No. 16-10949, 2017 WL 4052191, at *7 (E.D. Mich. Aug. 11, 2017) (citing *Tate v. Howes*, 2009 WL 1346621, at *5 (W.D. Mich. 2009)); *Bradley v. Conarty*, No. 1:16-CV-715, WL 4675158, at *2 (W.D. Mich. Oct. 18, 2017) ("[W]ithout some additional negative consequence, a termination from a prison work assignment does not amount to an adverse action") (internal citations omitted). Yet, the Sixth Circuit has stated that a First Amendment violation can occur when a prisoner loses his employment as a result of exercising his constitutional right to free speech by filing grievances, especially when the loss of employment is accompanied by multiple other negative consequences, including loss of access to the courts. *Walton v. Gray*, 695 Fed.Appx. 144, 145-46 (6th Cir. 2017) (Recognizing that loss of high-paying employment could be adverse action when the plaintiff also was denied access to legal resources, thus causing him to miss his appeal deadline) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005)); *Newsom v. Norris*, 888 F.2d 371, 375 (6th Cir. 1989) ("Although the appellees did not demonstrate a cognizable property interest in their position as inmate advisors, they did however have a cognizable liberty interest in remaining in their respective positions free from impermissible interference").

Tesley alleges that as a result of his refusal to withdraw his grievances, he was found guilty at his misconduct hearing and consequently suffered the penalties of four days in toplock and loss of his prison employment. Even when considered in the aggregate, these allegations do not rise to the level of a cognizable adverse action. First, unlike the plaintiff in *Siggers El*, nothing Tesley alleges affected his ability to access the courts. *Siggers-El*, 412 F.3d at 702.

16

Similarly, unlike in *Walton*, Tesley was in no way deprived of access to the court system. While the plaintiff in *Walton* suffered loss of prison employment and was also deprived of access to the law library, causing him to miss his appeal deadline, Tesley suffered loss of employment only in addition to four days in toplock, neither of which affected his right to access the courts. *Walton*, 695 Fed.Appx. at 145-146. Second, prior courts have found that the combination of the loss of a high paying job with short term loss of privileges does not constitute adverse action. In *Dykes v. McRoberts*, the Court found that even when considered in combination, loss of high paying prison job, transfer to a supposedly disciplinary facility, and security increase did not constitute adverse action. *Dykes v. McRoberts*, No. 13-cv-13812, 2015 WL 9948793, at *6 (E.D. Mich. Nov. 5, 2015). Even when considered in addition to allegedly fraudulent misconduct ticket, the loss of Tesley's prison employment and four days in toplock, are not sufficient to constitute adverse action.[8] Accordingly, Tesley's First Amendment retaliation claim against Martin fails.

---

[8] Defendants argue that the only action potentially qualifying as adverse is the finding of guilt at the misconduct hearing, but that under §1983 the Court will not consider the substance of a conviction in a disciplinary hearing. (Doc. #12 at 21). In support of this argument, Defendants cite *Edwards v. Balisok*, 520 U.S. 641 (1997), a Fourteenth Amendment case in which the Court found that so long as there is "some evidence" to support a finding of guilty at a misconduct hearing, the court may not inquire into the legitimacy of the finding. *Id.* at 647-48. Certain Sixth Circuit cases have applied this rule, referring to it as the "checkmate" doctrine. *Burton v. Rowley*, 234 F.3d 1267, 1268 (6th Cir. 2000) (unpublished); *Alexander v. Ojala*, No. 2:16 Civ. 85, 2017 WL 4697523, at *2 (W.D. Mich. Aug. 30, 2017) ("In applying the so-called checkmate doctrine, the Sixth Circuit has held that a finding of guilt upon some evidence of a violation of prison rules essentially checkmates [a] retaliation claim.") (internal quotations omitted) (internal citations omitted); *Hardy v. Adams*, 2016 WL 2935762, at *3 (W.D. Mich. May 20, 2016) ("[W]hen a plaintiff is ultimately found guilty of a misconduct charge, the plaintiff cannot state a claim for retaliation arising from the misconduct charge").

Yet, more recently, the rule has been called into question. *Griffin v. Berghuis*, No. 11-14876, 2016 WL 1165826, at *6 (E.D. Mich. 2016) ("The checkmate doctrine, which only appears in unpublished Sixth Circuit decisions, has been called in question by Judge Tarnow . . ."); *Wagner v. Randall*, No. 1315075, 2014 WL 4843686, at *3 (E.D. Mich. Sept. 29, 2014) ("[T]o allow retaliatory discipline claims only where prison disciplinary proceedings terminated in plaintiff's favor 'would unfairly tempt corrections officers to enrobe themselves and their colleagues in

### 3. *Tesley's Fifth Amendment Claim Against Martin Should Be Dismissed*

Tesley's complaint also fails to state a cognizable Fifth Amendment claim against Martin. "The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government*." Scott v. Clay County Tenn.*, 205 F.3d 867, 873 n. 8 (6th Cir. 2000); *Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461-62 (1952). Tesley was being held at Michigan Department of Corrections facility – ARF – at the time the events in his complaint transpired, and Martin was employed by the State of Michigan, not the federal government. Accordingly, Tesley's Fifth Amendment claim against Martin is not cognizable.

### 4. *Tesley's Fourteenth Amendment Claim Against Martin Should Be Dismissed*

Tesley fails to plead facts sufficient to support his Fourteenth Amendment claim against Defendant Martin. As stated above, the Fourteenth Amendment's Due Process Clause does apply to state actors. *Scott v. Clay County Tenn.*, 205 F.3d 867, 873 n. 8 (6th Cir. 2000); *Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461-62 (1952). Due process rights include both a substantive and a procedural component: substantive due process "prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty," whereas procedural due process requires that such deprivations are "implemented in a fair manner." *United States v. Salerno*, 48 U.S. 739, 746 (1987) (quotation and citation omitted); *see also Heard v. Caruso*, 351 F. App'x 1, 9 (6th Cir. 2009) (noting that

---

what would be an absolute shield against retaliation claims'") (quoting *Woods v. Smith*, 60 F.3d 1161, 1164-65 (5th Cir. 1995)). *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) is particularly instructive in this case. In it, the court found that the dismissal of the plaintiff's complaint at the pleading stage was in error because, after discovery, the plaintiff may have been able to establish that retaliation was a motivating factor for the misconduct ticket. *Id.* at 442. Thus, for the purposes of this motion, the Court will assume that Tesley's claims regarding the alleged adverse action taken against him are not barred by the checkmate doctrine.

procedural due process tests "whether the state afforded the inmate sufficient process").

Here, Tesley's due process claim against Martin is subject to dismissal in multiple respects. First, to the extent Tesley's due process claim is related to the confiscation of his typewriter, that claim is barred because he failed to allege or show the lack of an adequate state remedy. A recent Western District of Michigan case, *Moore v. Fegan*, No. 2:15-CV-142, 2015 WL 7777271, at *7–8 (W.D. Mich. Dec. 2, 2015), is on point and aptly explains the principle:

> Plaintiff claims that Defendants [sic] Benson violated his due process rights when he either confiscated or destroyed Plaintiff's legal property. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

> Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at

480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's due process claim against Defendant Benson will be dismissed.

Similarly, Tesley does not allege or explain why he could not challenge the confiscation of his typewriter in a state-court action.  Accordingly, his due process claim as to that issue should be dismissed.

The other aspects of Tesley's due process claim also lack merit.  A prisoner can prevail on an alleged deprivation of procedural due process rights only where he has been subjected to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" without due process.  *Bradley v. Evans*, 229 F.3d 1150 at *3 (6th Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S. 472, 472 (1995)).  The Sixth Circuit has found that an inmate's procedural due process rights are not implicated by placement in highly restrictive conditions of confinement, including temporary commitment to maximum security administrative segregation.  *See Williams v. Lindamood*, 526 F. App's 559, 563 (6th Cir. 2013) (holding that temporary confinement to administrative segregation, including confinement to a cell for 23 hours per day, was not an atypical or significant hardship); *Evans*, 229 F.3d 1150 at *8 (holding that temporary confinement to maximum security punitive segregation did not violate a prisoner's procedural due process rights).  Accordingly, Tesley's allegations about being placed on "toplock" for four days cannot constitute a violation of his due process rights.

Tesley's due process rights are also not implicated by the alleged loss of his prison employment.  *Carter v. Tucker*, 69 Fed. Appx. 678, 2003 U.S. App. LEXIS 13509, at *5 (6th Cir. 2003) (unpublished) ("A prisoner has no constitutional right to prison employment or a particular prison job…"); *Majied v. Brown*, 803 F.2d 720, 1986 U.S. App. LEXIS 31230, at *3 (6th Cir. 1986) (citing *Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978), cert. denied, 435 U.S.

1009 (1978)) (unpublished) ("[t]he classification of work assignments of prisoners are matters of prison administration…, within the sound discretion of prison administrators."). Nor are due process rights implicated by the filing of false accusations of misconduct. *Jackson v. Madery* 158 F. Appx. 656, 662 (6th Cir. 2005).[9]

For all of the above reasons, Tesley's due process claims should be dismissed.

### 5. The Court Will Deny Tesley's Motion for Leave to Amend

As noted above, in response to Defendants' Motion to Dismiss, Tesley first withdrew his original claims against Cook (Doc. #15 at 2), and then filed a motion for leave to amend to assert a First Amendment retaliation claim against that defendant. (Doc. #16). Fed. R. Civ. P. 15(a)(1) provides that, "A party may amend its pleading once as a matter of course within: **(A)** 21 days after serving it, or **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Otherwise, a party may amend only with the opposing party's written consent or the Court's leave. *See* Fed. R. Civ. P. 15(a)(2). Although such leave should be freely given "when justice so requires," *id.*, a court should deny a motion to amend "if the amendment is brought in bad faith, for dilatory purposes, results in undue delays or prejudice to the opposing party or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford*

---

[9] Even if Tesley had been deprived of a liberty interest recognized under the Fourteenth Amendment, he was afforded the requirements of due process by receiving notice and an opportunity to be heard. *Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974) (setting forth advanced written notice and an opportunity to make a defense as the two procedures necessary to satisfy the minimum due process requirements in the context of an inmate facing disciplinary proceedings). Tesley does not claim he was deprived of advanced notice of the contents of the report. He was also given a hearing, which afforded him the opportunity to present a defense.

*Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. V. Dep't of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).

Here, rather than filing a responsive pleading, Defendants filed (and served) their instant Motion to Dismiss and/or for Summary Judgment Based on Failure to Exhaust Administrative Remedies on July 19, 2017 [12]. Thus, under Fed. R. Civ. P. 15(a)(1)(B), Tesley had 21 days thereafter to file an amended complaint as of right. Tesley did file an amended complaint [9] within the allowable timeframe, but now seeks to amend a second time. Therefore, this second proposed amendment is permissible only with the Defendants' written consent or leave of the Court. Fed. R. Civ. P. 15(a)(2).

Although leave to amend should generally be freely given, Tesley's motion will be denied because his proposed amendments would be futile. The only new substantive allegations raised in Tesley's proposed amended complaint are the following which relate to his First Amendment retaliation claim against Cook:

> 24. Defendant Cook knew or should have known that issuing Plaintiff the fraudulent misconduct was harassment and retaliation.
>
> 25. Accordingly Plaintiff hereby asserts a claim against Defendant A. Cook under the First Amendment to the U.S. Constitution[.]

(Doc. #16).

Cook persuasively argues in his response to Tesley's motion that this proposed claim is futile because Tesley did not properly exhaust it through the grievance process. (Doc. #18). Defendants state in their Objection to Plaintiff's Motion for Leave to Amend that, "[The exhaustion] requirement is satisfied by complying with MDOC's grievance policy which includes, among other things, that Plaintiff name the issue(s) for which he is grieving in sufficient detail to allow MDOC officials to address them outside of the court proceeding."

(Doc. #18 at 9).  Indeed, as discussed above, in order to properly exhaust a retaliation claim in a grievance, an inmate must have included in that grievance "facts that would have indicated that he was grieving [the guard's] alleged retaliatory conduct."  *Garrison*, 18 F. App'x at 331.  *See also*, *Sanchez-Ramos*, 370 F. Supp. 2d at 655.

Here, although Tesley did file grievances related to Defendant Cook's misconduct report, stating that another officer, Sgt. Michaels, "failed in his duty as a [Superior] Officer to protect me from the arbitrary actions of reporting C/O Cook," the grievance made no mention of retaliatory motive on the part of Defendant Cook.  (Doc #12-3 at 27).  Tesley also grieved the incident in a separate grievance alleging "Abuse of Power. . .  Conduct Unbecoming of Correctional Employee."  (*Id.* at 12).  In this grievance, Tesley described his conversation with Defendant Cook and the subsequent misconduct report.  But again, nowhere in the grievance did Tesley allege retaliation.  (*Id.*).  Instead, Tesley complained that "C/O Cook has no power or authority to establish a scheduled time for me to report to work other than what Classifications has determined him attempting to do so is an abuse of his power as a Corrections Officer as well as it is Conduct Unbecoming of a Correctional Employee."  (*Id.*).  Consequently, he did not exhaust a First Amendment retaliation claim against Cook, and it would be futile to allow the proposed amendment.  Accordingly, in a separate Order of today's date (*see* Doc. #21) the Court will deny Tesley's motion for leave to amend to add this claim (Doc. #16).

## III.    CONCLUSION

For the forgoing reasons, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) **(Doc. #12)** be **GRANTED**.

Dated: November 15, 2017                          s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                  United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).   The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).   Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.   A party may respond to another party's objections within 14 days after being served with a copy.   *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).   Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

Dated:  November 15, 2017