UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL TESLEY,

        Plaintiff,

v.

DAVE MARTIN,

        Defendant.

_____/

Civil Action No. 17-11249
Honorable Denise Page Hood
Magistrate Judge David R. Grand

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 56)

On April 19, 2017, *pro se* Plaintiff Nathaniel Tesley ("Tesley") filed his complaint in this matter, pursuant to 42 U.S.C. § 1983, alleging, in relevant part, a claim for First Amendment retaliation against Defendant Dave Martin ("Martin").[1] (ECF No. 1). An Order of Reference was entered on July 11, 2017, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 10).

On November 19, 2019, Martin filed a motion for summary judgment. (ECF No. 56). On December 11, 2019, Tesley filed a "partial response," indicating that he could not fully respond to Martin's motion because he was still waiting for certain "discovery items" that Martin had not produced. (ECF No. 58, PageID.534). Consequently, on January 24, 2020, the Court held an informal telephone conference, during which counsel for Martin

---

[1] On April 1, 2019, the Sixth Circuit Court of Appeals issued an Order vacating in part the District Court's prior decision granting a Rule 12(b)(6) motion to dismiss Tesley's claims in their entirety. (ECF No. 34). Thus, Tesley's sole remaining claim in this action is for First Amendment retaliation against Defendant Martin.

indicated that he had mailed the documents at issue to Tesley on January 22, 2020. Tesley was given additional time to supplement his response to Martin's dispositive motion, and on February 19, 2020, he filed a "supplemented partial response," again claiming that he had not been provided certain documents he believes crucial to his case. (ECF No. 61). Martin did not file a reply brief or otherwise contest Tesley's assertion in this respect.

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Martin's Motion for Summary Judgment **(ECF No. 56)** be **GRANTED IN PART**, as to Tesley's official capacity claim, and **DENIED IN ALL OTHER RESPECTS**.

## II. REPORT

### A. Factual Background

Tesley is currently an inmate of the Michigan Department of Corrections ("MDOC"), housed at the G. Robert Cotton Correctional Facility in Jackson, Michigan. However, the events at issue in this case took place in September 2016, when Tesley was housed at the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan. At that time, Martin was employed as a Resident Unit Manager ("RUM") at ARF.

In his complaint, Tesley alleges that, on September 5, 2016, he reported for his usual job assignment at 1230 hours, but was told by his immediate supervisor, Corrections Officer Howard, that he was not needed. (ECF No. 1, PageID.4). Nevertheless, that same

day, Corrections Officer Cook issued Tesley an "out of place" misconduct, believing he was absent from his job assignment between 1400 and 1530 hours without staff authorization. (*Id*., PageID.3).

On September 6, 2016, Tesley's "out of place" misconduct was reviewed by MDOC Sergeant Michaels. The next day, Tesley filed two grievances – one against Cook, alleging that he did not have the authority to require Tesley to report to work at 1400 hours, and one against Michaels, asserting that he failed to protect Tesley from Cook's "arbitrary actions" in issuing the misconduct. (ECF No. 56-3, PageID.479, 486).

While those grievances were pending, on September 13, 2016, Martin initiated a hearing on Tesley's "out of place" misconduct. (ECF No. 56-2, PageID.448; ECF No. 56-4, PageID.503). That hearing was adjourned so that Martin could speak with Corrections Officer Howard to determine if he had, in fact, told Tesley he did not need to report to his job assignment on the day in question.[2] (*Id.*).

It is here that the parties' versions of the facts diverge. According to Martin, he reconvened the misconduct hearing on September 17, 2016, found Tesley guilty of the "out of place" misconduct at that time, and sanctioned Tesley with four days of top lock.[3] (ECF No. 56-2, PageID.443). Martin further avers that, after the misconduct hearing concluded, a report was created, which he signed on September 17, 2016, and then passed along to

---

[2] According to Tesley, Martin told him: "If he [Howard] says he laid you in you're good." (ECF No. 56-3, PageID.493).

[3] Top lock is a more restrictive confinement than general-population confinement, as explained in detail in this Court's prior Report and Recommendation. (ECF No. 20, PageID.179).

3

Hearing Investigator Edmond, who signed it on September 22, 2016. (*Id.*, PageID.443, 448). Tesley did not appeal the guilty finding and served his top lock sanction from September 24-28, 2016. (*Id.*; ECF No. 56-4, PageID.508).

Critically, Tesley disputes that Martin reconvened the misconduct hearing on September 17, 2016 and found him guilty that day, saying the hearing was never finished.[4] (ECF No. 58, PageID.524; ECF No. 56-4, PageID.504). According to Tesley, on September 21, 2016, Martin "came to [his] housing unit for the purpose of reviewing with him" the grievances he had filed against Cook and Michaels. (ECF No. 1, PageID.4). Tesley alleges that, during this conversation, Martin told him that if he would "make a deal" (i.e., rescind his grievances against Cook and Michaels), Martin would ensure a favorable outcome at the misconduct hearing. Tesley further alleges that when he refused Martin's deal, Martin threated to give him 30 days of top lock as a sanction for his misconduct. (ECF No. 56-4, PageID.507). Martin denies that the September 21st meeting with Tesley occurred,[5] and he maintains that there was no reason for such a conversation to occur because he had found Tesley guilty on the misconduct four days earlier. (ECF No. 56-2, PageID.444).

---

[4] Indeed, Tesley claims – correctly – that September 17th was a Saturday, and he asserts that MDOC RUMs such as Martin typically do not work weekends. (ECF No. 58, PageID.524-25).

[5] On September 23, 2016, Tesley filed a grievance against Martin regarding this alleged encounter, claiming that the "make a deal" conversation occurred in the office of Assistant Resident Unit Supervisor ("ARUS") Michael West, with both ARUS West and ARUS Edwin Wade being present. (ECF No. 56-3, PageID.493). But, both West and Wade have executed affidavits stating that they do not recall the September 21st conversation. (ECF No. 56-5, PageID.512; ECF No. 56-6, PageID.515-16).

4

### B. Standard of Review

Federal Rule of Civil Procedure 56 provides: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

In this case, Martin asserts that he is entitled to qualified immunity from liability on Tesley's First Amendment retaliation claim. (ECF No. 56, PageID.433-36). The doctrine of qualified immunity insulates state actors from liability in close-call situations. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001) (explaining that the defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct). Once the qualified immunity defense is raised, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). A plaintiff must satisfy both of these prongs, but the Court may take up the questions in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (*abrogating in part Saucier*, 533 U.S. at 201).

The qualified immunity defense may be raised at any stage of the case. Where, as here, it is raised in a motion for summary judgment, courts must weave the summary judgment standard into each step of the qualified immunity analysis. *See Scott v. Harris*, 550 U.S. 372, 377-78 (2007).

**C.   Analysis**

As set forth above, the sole remaining claim in this case is Tesley's First Amendment retaliation claim against Martin; specifically, Tesley alleges that Martin threatened him with sanctions if he wouldn't "make a deal" on the grievances he filed against Cook and Michaels; and, when he refused to do so, Martin found him guilty of the "out of place" misconduct and sanctioned him with four days top lock.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant took an adverse action against the plaintiff likely to chill a person of "ordinary firmness" from engaging in the protected conduct; and (3) there is a causal connection between elements one and two – that is, that "the adverse action was motivated at least in part by [the plaintiff's] protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). In this case, Martin does not dispute the first two elements of Tesley's retaliation claim – namely, that Tesley engaged in protected conduct by filing (and insisting on pursuing) grievances against Cook and Michaels, and that he suffered an adverse action when he was threatened with sanctions and subsequently punished with four days top lock.

6

Thus, the issue before the Court is whether Tesley has raised a material question of fact as to a causal connection between the protected activity and the adverse actions.

The gist of Martin's causation argument focuses on timing, and he states as follows in his sworn affidavit:

> 5. On September 13, 2016, I began a hearing on an "out of place" class II misconduct Tesley received on September 5, 2016. This hearing was adjourned because Tesley requested that I interview his first shift supervisor to determine if he had authorization to not be at his porter job on September 5.
>
> 6. I reconvened the hearing on Tesley's September 5 "out of place" misconduct on September 17, 2016. On September 17, 2016, I determined that Tesley was guilty of the misconduct because he did not have authorization to be absent from his job between 1400 hours and 1530 hours. Because I found Tesley guilty on this misconduct, I sanctioned him four days of Top Lock before ending the hearing on September 17, 2016.
>
> \*   \*   \*
>
> 9. I did not meet with Tesley on September 21, 2016 to discuss his grievances against Corrections Officer Cook and Sergeant Michaels, nor the "out of place" misconduct that I had ruled upon on September 17, 2016. I never offered to make a deal with Tesley regarding the grievances and misconduct, nor did I threaten Tesley with 30 days of sanctions.

(ECF No. 56-2, PageID.443-44). Martin argues, then, that Tesley cannot establish the causal element of his retaliation claim because the September 21st threat of 30 days of sanctions was never made, and the actual adverse action – four days of top lock – was determined appropriate on September 17th, before the September 21st conversation allegedly occurred. (ECF No. 56, PageID.432-33).

Factually, however, Tesley disputes the very premise of Martin's argument – namely, that the misconduct hearing was reconvened on September 17, 2016 and he was

7

found guilty on that date. In support of this assertion, Tesley points out that September 17th was a Saturday, and he states that "MDOC RUMs [such as Martin] don't work weekends."  (ECF No. 58, PageID.525).  Tesley further avers that he was never given notice of or informed of his right to attend a hearing on September 17th and that, in fact, he did not do so.  (*Id.*, PageID.533).  And, finally, Tesley asserts that, throughout the course of discovery, he has repeatedly tried to to obtain an "authentic rendering of Martin's Sign IN/OUT entrances into the ARF Employee Attendance Log on September 17, 2016[,]" but that such documents still have not been produced.  (*Id.*, PageID.534).  He claims this "Sign In/Out log" would be "material evidence to prove that … the 'so called' Hearing didn't happen" and that Martin went so far as to "fraudulently back date[] his findings on the misconduct to 9-17-2016 …."  (ECF No. 58, PageID.525, 527).

Very recently, the Court had occasion to consider a situation such as this, where the parties disputed whether a causal connection existed between the plaintiff's protected activity and the adverse action.  *See Miller v. Klee*, No. 17-11006, 2020 WL 833322, at *10 (E.D. Mich. Jan. 27, 2020).  In that case, the Court explained:

> It is not for the court to decide if plaintiff's allegations are truthful. What is required is that the court determine if there is sufficient evidence for the fact finder to determine that the adverse action was motivated in part by the protected conduct.  In making that determination, the facts have to be viewed in the light most favorable to the non-moving party, which in this case is the plaintiff.  Here, the crux of the issue is the question of causation – whether the adverse action taken against plaintiff was motivated at least in part by the plaintiff's protected conduct.  [T]he causation element of Plaintiff's First Amendment retaliation claim looks to Defendant's motivation in [taking the adverse action].  When the defendants' intent is at issue, summary judgment is particularly inappropriate.

8

*Id.* (internal citations and quotations omitted).

Here, the key factual dispute is whether Martin reconvened the misconduct hearing on September 17th and found Tesley guilty on that date. If so, then there simply cannot be a causal connection between any adverse action and Tesley's refusal to "make a deal" because the "make a deal" conversation happened four days later. Applying the principles set forth in *Miller*, however, and viewing the evidence in the light most favorable to Tesley, there remains a genuine issue of material fact as to whether Martin did in fact reconvene the misconduct hearing on September 17th and find Tesley guilty on that date. Indeed, in his first "partial response" to Martin's motion for summary judgment, Tesley clearly stated:

> First, Martin did not reconvene the Hearing on September 17, 2016 as he describes, because that day was a Saturday and MDOC RUMs don't work weekends. The Sign In/Out log Plaintiff is asking the Court to cause Martin to produce will be material evidence to prove that fact and that the "so called" Hearing didn't happen. It's just Martin's pretext to hide his retaliatory conduct.

(ECF No. 58, PageID.524-25). The Court held an informal telephone conference with the parties to attempt to resolve Tesley's continued requests for the sign in/out log, which purportedly would have included Martin's name had he in fact worked on September 17th. According to a supplemental response Tesley filed after that call, Martin produced six pages of what Tesley characterizes as a "totally unrelated and unresponsive" Unit Log, but he still did not produce the requested sign in/out log. (ECF No. 61, PageID.545).

Whether Tesley is right or wrong about the so-called "sign in/out log," the Court does not know. What is known, however, is that despite the centrality of this particular issue to Tesley's claim, Martin has apparently failed to produce this critical document or

9

explain why he is unable to do so. Indeed, when Tesley indicated in his "supplemented partial response" to Martin's motion that the "sign in/out log" still had not been produced, Martin did not file a reply brief. Thus, at least on the present record, a genuine issue of material fact exists as to the causal element of Tesley's retaliation claim.

That alone does not get Tesley past Martin's motion; rather, the burden shifts to Martin to show that he would have taken the same action in the absence of the protected activity. *See Miller*, 2020 WL 833322, at *11 (citing *Thaddeus-X*, 175 F.3d at 399). "Where a defendant can show non-retaliatory motives for his actions, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Annabel v. Frost*, No. 14-10244, 2019 WL 5800287, at *6 (E.D. Mich. Aug. 9, 2019) (internal quotations omitted). Here, in his affidavit, Martin stated:

> 11. I would have found Tesley guilty of the September 5 misconduct and given him a sanction of four days of Top Lock whether or not he had filed grievances against Officers Cook and Michaels or whether he refused to sign off on any grievances. The evidence established that Tesley was guilty of the misconduct and the sanction was pursuant to MDOC policy….

(ECF No. 56-2, PageID.444-45). This type of conclusory statement is insufficient to conclusively establish that Martin would have taken the same action absent Tesley's protected activity. *See Thaddeus-X*, 175 F.3d at 399 (where defendants did "little more than deny the allegations put forth by plaintiffs," they did not meet their burden at the summary judgment stage). Indeed, Tesley maintains that he had permission from his direct supervisor to be absent from his job assignment at the time in question; if that is in fact the

10

case, it would seem that he would not have been guilty of an "out of place" misconduct and thus would not have been sanctioned. Thus, genuine issues of material fact preclude granting summary judgment in Martin's favor on Tesley's retaliation claim.

Martin also argues that he is entitled to qualified immunity on Tesley's retaliation claim. After reciting the background law, however, Martin's entire analysis of this issue consists of the following:

> Controlling precedent from the Supreme Court and the Sixth Circuit would not have put Martin on notice that his conduct violated the First Amendment. Tesley has failed to establish that there was a causal link between his grievances and Martin's determination at the misconduct hearing. Additionally, Martin's actions would have been the same whether Tesley had filed any grievances or not. Because Tesley's constitutional rights were not violated, Martin is entitled to qualified immunity.

(ECF No. 56, PageID.436). As set forth above, however, a genuine issue of material fact exists as to whether Tesley's constitutional rights were violated. And, the Sixth Circuit, speaking about matters that occurred in 2015, has stated, "we think that a reasonable prison officer would have been aware that issuing a misconduct ticket, even a minor misconduct ticket, in retaliation for the inmate's exercise of his First Amendment rights could give rise to constitutional liability." *See Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018). There is no reason for a different conclusion where the alleged unconstitutional conduct is finding an inmate guilty on a misconduct in retaliation for engaging in protected activity. Consequently, where the alleged conduct was clearly unconstitutional in 2016, Martin is not entitled to qualified immunity.

Finally, Martin argues that he is immune from liability with respect to Tesley's

11

official capacity claim against him. (ECF No. 56, PageID.436-37). It is true that Eleventh Amendment immunity clearly applies to bar claims for monetary damages against MDOC employees – such as Martin – in their official capacities. *See J.R. Pettway v. Michigan Dept. of Corr.*, No. 19-11201, 2019 WL 2369281, at *2 (E.D. Mich. June 5, 2019). Thus, dismissal of Tesley's official capacity claim against Martin is warranted.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Martin's Motion for Summary Judgment **(ECF No. 56)** be **GRANTED IN PART**, as to Tesley's official capacity claim, and **DENIED IN ALL OTHER RESPECTS**.

Dated: June 9, 2020  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith*

*v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 9, 2020.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
